**TABLE OF CONTENTS**

**Page**

SUMMARY OF BACKGROUND AND PROCEDURAL HISTORY ............................... 1

ARGUMENT ........................................................................................................................ 4

I.  RESPONDENTS' MOTION FOR A STAY SHOULD BE DENIED .................... 4

    A.  The Court Should Grant Petitioner's Motion For A Writ Of Habeas Corpus Or An Order To Show Cause. ............................................ 4

II. IF A STAY GRANTED, IT SHOULD BE NARROWLY TAILORED TO ADDRESS RESPONDENT'S CONCERNS AND OTHERWISE PROTECT PETITIONER'S RIGHTS ................................................................. 6

    A.  Respondents Should Be Enjoined From Transferring Petitioner While The Stay Is In Effect. ....................................................................... 7

    B.  Petitioner Should Be Permitted To Communicate And Visit With Counsel Pursuant To The Protective Order. ............................................. 8

    C.  Respondents Should Be Required To Provide Counsel With The Factual Return Within Thirty Days. .......................................................... 9

        1.  Producing The Factual Return Will Not Be Unduly Burdensome To Respondents. .................................................. 11

        2.  The Protective Order Will Protect Classified Information. ........... 12

        3.  Respondents Should Be Required To Produce The Factual Return Within Thirty Days Of Entry Of The Protective Order. ............................................................................................ 13

    D.  Petitioner Should Be Permitted To Move For Emergency Relief ............ 13

CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abdulla Thani Faris Al-Anazi v. Bush*, 370 F. Supp. 2d 188 (D.D.C. 2005)...........8, 10, 13

*INS v. St. Cyr*, 533 U.S. 289 (2001) ................................................................................4

*Mokit v. Bush*, 374 F. Supp. 2d 106 (D.D.C. 2005) .....................................................8, 13

*Rasul v. Bush,* 124 S.Ct. 2686 (2004) ........................................................................2, 4

## DOCKETED CASES

*Al-Adahi v. Bush*, No. 05-CV-00280 (GK), slip op. (D.D.C. Apr. 29, 2005)....................10

*Al-Shamri v. Bush*, No. 05-CV-00551 (RWR), slip op. (D.D.C. May 10, 2005) ..............10

*El-Banna v. Bush*, No. 04-CV-01144 (RWR), slip op. (D.D.C. Apr. 8, 2005) .................10

*Errachidi v. Bush*, No. 05-CV-00640 (EGS), slip op. (D.D.C. Apr. 21, 2005). ................10

*Kurnaz v. Bush*, No. 04-CV-01135 (ESH), 2005 WL 8329542 (D.D.C. Apr. 12, 2005) ................................................................................................8, 10, 13

*Salahi v. Bush*, No. 05-CV-0569 (JR), slip op. (D.D.C. Apr. 14, 2005) ............................7

## FEDERAL STATUTES

28 U.S.C. § 2243................................................................................................1, 3, 4

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
------------------------------------------------------------------------ x

| | |
|---|---|
| **ABDU AL-QADER HUSSAIN AL-MUDAFARI,**     Detainee, Guantánamo Bay Naval Station     Guantánamo Bay, Cuba, | : : : |
| **SALIEH HUSSAIN ALI AL-MUDAFARI,**     as Next Friend of Abdu Al-Qader Hussain     Al-Mudafari, | : : : |
| *Petitioners*, | : |
| v. | : |
| **GEORGE W. BUSH,** *et al.*, | : |
| *Respondents.* | : |

**Civil Action No. 05-CV-02185 (JR)**

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENTS' MOTION TO STAY PROCEEDINGS PENDING RELATED APPEALS

## AND

## IN FURTHER SUPPORT OF PETITIONER'S MOTION FOR THE IMMEDIATE ISSUANCE OF A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2243, OR, ALTERNATIVELY TO ISSUE AN ORDER TO SHOW CAUSE

This memorandum of points and authorities is respectfully submitted on behalf of Petitioner Abdu Al-Qader Hussain Al-Mudafari ("Petitioner Al-Mudafari") in opposition to Respondents' Motion To Stay Proceedings Pending Related Appeals, and in further support of Petitioner's Motion For The Immediate Issuance Of A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2243, Or, Alternatively To Issue An Order To Show Cause.

### SUMMARY OF BACKGROUND AND PROCEDURAL HISTORY

Petitioner Al-Mudafari, a Yemeni national, was apprehended by authorities in or around January 2002, and since then has been in the custody of Respondents at the

22077535v1

United States Naval Base at Guantánamo Bay, Cuba ("Guantánamo"). During this entire time, Respondents have obstructed meaningful access to the Courts. Respondents now seek a judicial order that would serve as a continuation of their unilateral policy of staying -- or more precisely, denying -- Petitioner's right to the most basic element of a *habeas* petition: Putting Respondents to the task of stating the grounds for holding Petitioner as prisoner in Guantánamo or else releasing him.

For over two years Respondents have exercised custody over Petitioner and refused to allow him any access to judicial review of the grounds and conditions of his detention. Once the Supreme Court held in *Rasul v. Bush* that Respondents must allow Guantánamo detainees the right to file a petition for *habeas* relief, though, Respondents had a duty to grant access to the Courts. Yet even after *Rasul* was decided, Respondents continued to interfere with Petitioner's ability to pursue his *habeas* rights. For example, Petitioner's ability to challenge his detention still has been slowed by the limitations on his ability to communicate with the outside world. Since Respondents continue to refuse to disclose the identities of the detainees, outside assistance is available only to those who have family aware that the detainee is being held at Guantanamo and who have the resources and know-how to access judicial review in the United States. To make the situation more difficult, Respondents refuse to allow any telephone communication with detainees.

On November 7, 2005, Petitioner filed a Motion For The Immediate Issuance Of A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2243, Or, Alternatively To Issue An Order To Show Cause. On November 15, 2005, Respondents filed a single memorandum

which is both a Motion To Stay Proceedings Pending Related Appeals and Opposition to Petitioner's Motion For The Immediate Issuance Of A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2243, Or, Alternatively To Issue An Order To Show Cause.

Because Respondents filed a single memorandum of points and authorities both in support of their motion for a stay and in opposition to Petitioner's motion for immediate issuance of a writ of habeas corpus, Petitioner respectfully submits this consolidated memorandum of points and authorities in further support of his motion and in opposition to Respondents' motion.

As explained below, Petitioners' motion for the issuance of a writ of *habeas corpus* should be granted, and Respondents' motion for a stay denied. Alternatively, if a stay pending appeal in related cases is entered, the stay should be modified so as to protect Petitioner by prohibiting Respondents from transferring him outside of the United States, permitting Petitioner to have access to his counsel, requiring Respondents to produce a factual return in this matter, and allowing Petitioner to challenge on an emergency basis conditions of detention.

3

## ARGUMENT

## POINT I

## RESPONDENTS' MOTION
## FOR A STAY SHOULD BE DENIED

### A. The Court Should Grant Petitioner's Motion For A Writ Of Habeas Corpus Or An Order To Show Cause.

The writ of *habeas corpus* was envisioned to be a device enabling swift judicial consideration of and response to illegal detention. "At its historical core, the writ of *habeas corpus* has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *INS v. St. Cyr,* 533 U.S. 289, 301 (2001), *quoted in Rasul v. Bush,* 124 S. Ct. 2686, 2692 (2004). The *habeas* statute requires that an application be presented fully to the court within a month of submission, unless good cause is shown, and should that it be considered "forthwith." 28 U.S.C. § 2243. In addition to the statutory requirement of speedy consideration, in *Rasul,* the Supreme Court specifically directed the district court to consider the merits of *habeas* petitions brought by detainees at Guantánamo. *See Rasul,* 124 S. Ct. at 2699.

Petitioner has been detained at Guantánamo for nearly four years. Not only has Petitioner been deprived of his right to petition for review for an extraordinarily long period of time, he has also been subject to extraordinary circumstances of detention. Petitioner has been imprisoned in a military base halfway around the world from his home, effectively deprived of communication with his family and friends, deprived of meaningful access to the Court [e.g., access that allows for delivery of correspondence in

4

less than six month's time], and subject to conditions of detention that are extreme by any standard.

Detainees at Guantánamo have described being beaten, threatened with dogs, subjected to freezing temperatures, shackled in a fetal position on the floor for up to 24 hours, and left in their own urine and feces.  Redacted Email (Aug. 2, 2004) (Exhibit 1 hereto); Redacted letter from T.J. Harrington, Deputy Assistant Director, Counterterrorism Division, FBI to Major General Donald J. Ryder, Dep't of the Army, re: Suspected Mistreatment of Detainees (July 14, 2004) (Exhibit 2 hereto).[1]  The International Committee of the Red Cross has said that the treatment of detainees at Guantánamo is "tantamount to torture."  Neil A. Lewis, *Fresh Details Emerge on Harsh Methods at Guantánamo,* N.Y. Times, Jan. 1, 2005 at A11 (Exhibit 3 hereto); *see also*, Paisley Dodds, *Videos of Riot Squads at Guantánamo Show Prisoners Being Punched and Stripped From the Waist Down* (AP), Feb. 1, 2005 ("Videotapes of riot squads subduing troublesome terror suspects at the U.S. prison camp at Guantánamo Bay show the guards punching some detainees, tying one to a gurney for questioning and forcing a dozen to strip from the waist down, according to a secret report.") (Exhibit 4 hereto).

Petitioner Al-Mudafari is entitled, after four years, to seek the elemental relief of a *habeas* petition:  Respondents should either state their reasons for his detention, or

---

[1] The U.S. Government produced these emails and numerous other documents in response to a Freedom of Information Act request and litigation brought by the American Civil Liberties Union and other organizations, *available at* http://www.aclu.org/torturefoia/released/010505.html.

release him.  At a minimum, Respondents should be ordered to identify the grounds for Petitioner's detention.

A stay in this action would effectively defeat the paramount statutory and common law requirements that *habeas* petitions be considered immediately and would condemn Petitioner to possibly illegal detention for many more months, if not indefinitely.

## POINT II

### IF A STAY IS GRANTED, IT SHOULD BE NARROWLY TAILORED TO ADDRESS RESPONDENTS' CONCERNS AND OTHERWISE PROTECT PETITIONER'S RIGHTS

A stay poses the risk that Petitioner will continue to be deprived of his right to review the grounds and conditions of his detention by an independent tribunal, not only during the pendency of a stay, but even after the stay terminates, during the period of time necessary to prepare Petitioner's case for litigation.  Respondents' unilateral conduct already substantially delayed the prosecution of Petitioner's action.  To the extent that a stay is warranted to address Respondents' professed concerns while appeals in related proceedings are pending, any stay should be narrowly tailored to only those legitimate concerns.  The Court, however, otherwise should allow Petitioner and his counsel to prepare Petitioner's claim for presentation as soon as the stay is dissolved, and also to preserve Petitioner's rights to petition for other necessary and urgent relief, such as to ensure adequate medical care.

Thus, if a stay is granted, the Court should also (i) protect this Court's jurisdiction over Petitioner; (ii) permit Petitioner's counsel to visit and communicate with him, as well as access the relevant documents, so that Petitioner is not further prejudiced if the pertinent appeals are resolved in favor of the Guantánamo detainees; and (iii) permit Petitioner to bring motions for emergency relief.

### A. Respondents Should Be Enjoined From Transferring Petitioner While The Stay Is In Effect.

This Court has ruled in other cases that while a stay is in place, Respondents are prohibited from transferring a detainee away from Guantánamo: "the stay will apply to all proceedings applicable to the petitioners, including without limitation their release, repatriation, or rendition, and it will remain in effect until further order of the Court." *Salahi v. Bush*, No. 05-CV-0569 (JR), slip op. at 1 (D.D.C. April 14, 2005). If a stay is entered in this case, it too should enjoin Respondents from transferring Petitioner outside of the United States.

On November 11, 2005, Petitioner filed a motion for a temporary restraining order and preliminary injunction enjoining Petitioner's transfer while his *habeas* application is pending. Petitioner respectfully refers the Court to the Points and Authorities submitted in support of the temporary restraining order and preliminary injunction for a complete explication of Petitioner's arguments in support of an order enjoining Respondents from transferring Petitioner out of the United States. The Petitioner's arguments apply in even greater measure in the event a stay is entered, since a stay that precludes Petitioner from petitioning for his release should perforce enjoin

Respondents from unilaterally transferring Petitioner to the custody of a foreign government and jeopardizing the Court's jurisdiction to resolve Petitioner's petition.

### B. Petitioner Should Be Permitted To Communicate And Visit With Counsel Pursuant To The Protective Order.

Respondents consented to Petitioner's motion for entry of the Protective Order,[2] and although they subsequently moved for a stay, Respondents' position on the Protective Order has not changed. (Resp'ts' Am. Mot. to Stay at 2). Therefore, even if the Court issues the stay, the Court should also enter the Protective Order, as other courts in this district have done. *See Mokit v. Bush*, 374 F. Supp. 2d 106, 106 (D.D.C. 2005); *Kurnaz v. Bush*, No. 04-CV-01135 (ESH), 2005 WL 839542, at *3 (D.D.C. Apr. 12, 2005); *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 200 (D.D.C. 2005). Allowing counsel to communicate with and visit Petitioner will permit counsel to work on Petitioner's habeas application during the pendency of a stay and therefore minimize the prejudice to Petitioner if the appeals are resolved in favor of the Guantánamo detainees.

---

[2] On November 10, 2005, Petitioner filed a motion on consent requesting entry in this case of (i) the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba, first issued on November 8, 2004 (344 F. Supp. 2d 174 (D.D.C. 2004)); (ii) the Order Addressing Designation Procedures for "Protected Information," first issued on November 10, 2004; and (iii) the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, first issued on December 13, 2004, all in the *In re Guantánamo Bay Detainee Cases* by then-Coordinating Judge Joyce Hens Green (collectively, "the Protective Order").

### C. Respondents Should Be Required To Provide Counsel With The Factual Return Within Thirty Days.

Respondents have had nearly four years to determine the grounds for Petitioner's detention, and throughout this entire time, Respondents have not been limited in their treatment of Petitioner by the rights afforded to virtually every other federal prisoner. For example: (i) Respondents have had the unfettered right to interrogate Petitioner as well as other detainees; (ii) Respondents have had access to documentary evidence obtained without the requirements of probable cause or warrant; (iii) Respondents have not been required to cooperate or disclose findings with Petitioner's counsel; and (iv) Respondents have not had to incur the burden or distraction of a trial or other hearings on the rights of detainees. In short, Respondents have had utter and comprehensive control over Petitioner and every other potential witness and document, and have not had to endure even the barest inconvenience associated with due process. Having held Petitioner Al-Mudafari for nearly four years, even if a stay is now entered Respondents should be required expeditiously to state the grounds for his continued detention.

The alleged basis for Petitioner's detention is contained in his factual return, a compilation of material from his review before the Combatant Status Review Tribunal ("CSRT"). Access to the factual return is critical to counsel's ability to represent Petitioner Al-Mudafari properly and to present his habeas application to the Court. To provide Petitioner Al-Mudafari with meaningful advice and counsel, his counsel needs, and is entitled to know without delay, the evidence which allegedly supports his extended detention in a United States military facility halfway around the world from his home.

To minimize the prejudice accruing to Petitioner from a stay, the Court should require Respondents to provide counsel with Petitioner's full factual return within thirty days of entry of the Protective Order. Other courts in this district have ordered similar relief because the full factual return is "necessary for petitioners' counsel effectively to represent petitioners." *Al-Anazi*, 370 F. Supp. at 200. "[E]ven initial conversations by counsel with their clients may be very difficult without access to that basic factual information." *Id.*; *see also Al-Shamri v. Bush*, No. 05-CV-00551 (RWR), slip op. at 4 (D.D.C. May 10, 2005) (staying proceedings but ordering the Government to produce factual returns); *El-Banna v. Bush*, No. 04-CV-01144 (RWR), slip op. at 7 (D.D.C. Apr. 8, 2005) (staying proceedings but ordering the Government to produce factual returns 30 days after entry of the Protective Order); *Errachidi v. Bush*, No. 05-CV-00640 (EGS), slip op. (D.D.C. Apr. 21, 2005) (same) (minute order).

If the pending appeals are resolved in favor of the detainees, counsel's access to the factual return now will improve judicial efficiency by "allow[ing] Petitioner to begin preparing well in advance of any ruling by the Court of Appeals" and therefore present a complete application to the Court soon after the stay is lifted. *See Al-Adahi v. Bush*, No. 05-CV-00280 (GK), slip op. at 2 & n.1 (D.D.C. Apr. 29, 2005). Such access will "ensure that the proceedings can continue in an orderly fashion in the event that the detainees prevail on appeal." *Kurnaz*, No. 04-CV-01135 (ESH), 2005 WL 839542, at *1 (D.D.C. Apr. 12, 2005).

### 1. Producing The Factual Return Will Not Be Unduly Burdensome To Respondents.

Given the critical importance of the factual return to Petitioner's habeas petition, Respondents should be required to provide it to Petitioner's counsel expeditiously, and certainly within thirty days of entry of the Protective Order, even if gathering the factual return requires some effort.

Respondents contend, without providing any specific detail, that compiling the factual record for production will entail substantial burden. Respondents, however, have been ordered to produce factual returns in other cases, and have succeeded in doing so, and their argument in opposition overstate the professed burden associated with that task.

Pursuant to Respondents' own policies, the factual returns were required to be compiled within three days of the decision of the CSRT regarding Petitioner, and all such decisions were to be completed by March 2005. Memorandum re: Order Establishing Combatant Status Review Tribunal (July 7, 2004), *available at* http://www.defenselink.mil/news/Jul2004/d20040707review.pdf; *see also* Update to Annex One of the Second Periodic Report of the United States of America to the Committee Against Torture (October 21, 2005) ("As of March 29, 2005, the CSRT Director had taken final action in all 558 cases."), *available at* http://www.state.gov/g/drl/rls/55712.htm. Petitioner's letter to the Court stated that the CSRT had determined that he is an enemy combatant. Producing the factual return would only require Respondents to copy what they have already collected.

Respondents argue that if they are required to produce the factual return, they will endure substantial burden because they would need to "prepare both public and classified

11

versions of the factual returns for submission to the Court and counsel. This argument cannot withstand any scrutiny. (Resp'ts' Mot. to Stay at 12). To the extent that a stay is entered, the factual return need only be provided to counsel. The Protective Order requires the parties to prepare a public non-classified version of material *only* that is to be filed with the Court. Respondents are not required to produce non-classified version of material that is to be provided to counsel.[3]

Furthermore, Respondents represented to the Court that "an unclassified summary of the evidence supporting the detainee's classification as an enemy combatant was made available to the detainee in advance of the CSRT hearing." (Resp'ts' Mot. to Stay at 5-6). To create that summary, Respondent must have reviewed each factual return and determined which information was classified. Therefore, if a non-classified version of the factual return is required, it should not be burdensome for Respondents to provide it.

### 2. The Protective Order Will Protect Classified Information.

The Protective Order will ensure that any classified material in the factual return is treated properly. The Protective Order permits production of classified material to counsel who have received security clearance. Respondents have allowed several of Petitioner's counsel to apply for security clearance. To date, two of Petitioner's attorneys have received security clearance, and the other attorneys hope to receive clearance soon.

---

[3] In the Motion For The Immediate Issuance Of A Writ Of Habeas Corpus, Petitioner requested that Respondents provide the Court with the lawful basis for his detention. To avoid the delay associated with Respondents preparing a non-classified version of the factual return prior to filing it with the Court, Petitioner is instead requesting that Respondents be ordered to provide the factual return only to counsel, not file it with the Court.

Even though counsel cannot discuss classified information from the factual return with the Petitioner, counsel's review of the return is still critically important for the prosecution of Petitioner's habeas petition. Respondents consented to the entry of the Protective Order and therefore presumably believe that it will protect any classified information. If Respondents have concerns about the treatment of classified information, the solution is to modify the Protective Order, not to deny counsel access to information relevant to this proceeding.

### 3. Respondents Should Be Required To Produce The Factual Return Within Thirty Days Of Entry Of The Protective Order.

A complete factual return for Petitioner Al-Mudafari should already have been compiled as part of the CSRT process. After the Protective Order is issued, counsel for Petitioner will be able to review the classified portions of the factual return, so redaction will not be necessary. Given the minimal effort needed to provide the factual return to counsel, Respondents should be required to do so within thirty days of entry of the Protective Order.

### D. Petitioner Should Be Permitted To Move For Emergency Relief.

As detailed above and in numerous news articles, there is substantial reason to fear that Petitioner is being detained under extraordinarily harsh conditions. If a stay is issued, Petitioner may need to challenge particular conditions of his confinement on an emergency basis. We respectfully request that any stay issued by the Court permit for the filing and disposition of motions for such emergency relief. Other courts in this judicial district have granted this relief. *See, e.g., Mokit*, 374 F. Supp. at 106; *Kurnaz*, 2005 WL 839542, at *3; *Al-Anazi*, 370 F. Supp. 2d at 200 (D.D.C. 2005).

13

## CONCLUSION

Petitioner respectfully requests that the Court deny Respondents' motion to stay this proceeding and grant Petitioner's motion for the issuance of a writ of habeas corpus, or in the alternative, an order to show cause. If the Court grants Respondents' motion for a stay, Petitioner respectfully requests that the Court (i) enjoin Respondents from transferring Petitioner from Guantánamo other than for the purpose of releasing him from custody; (ii) enter the Protective Order so that the parties may avail themselves of the procedures set forth in it; (iii) order Respondents to provide counsel with Petitioner's full factual return within thirty days of the issuance of the Protective Order; and (iv) allow for the filing and disposition of motions for emergency relief.

Dated: November 22, 2005.

Respectfully submitted,

Counsel for Petitioner:

/s/ John B. Missing_____
John B. Missing (Bar No. 425469)
Jennifer C. Argabright (Bar No. 480763)
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W.
Washington, D.C. 20004-1169
Tel: (202) 383 8000
Fax: (202) 383 8118

22077535v1

Jeffrey I. Lang
Jennifer R. Cowan
Philip Rohlik
Ellen A. Hochberg
Tatia L. Miller
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel:  (212) 909-6000
Fax:  (212) 909-6836

*Of Counsel*
Barbara Olshansky
Gitanjali Gutierrez
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499